UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BERWICK CLINIC COMPANY, L.L.C.

      Debtor.

No. 22-45589
Chapter 11
Hon.  Lisa S. Gretchko

## MOTION OF DEBTOR TO ASSUME INFRAHEALTH  EXECUTORY CONTRACT, AND FOR RELATED RELIEF

Debtor states:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested include Bankruptcy Code sections 105 and 365.

### BACKGROUND

3.      The above-captioned proceedings were commenced by the filing of a voluntary Chapter 11 Petition by Debtor on July 18, 2022  (the **"Commencement Date"**).  The Debtor is authorized to continue to operate its

business and manage its property as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in this Chapter 11 case.

4.     Debtor operates a vascular clinic and has previously operated various clinics prepetition.

## RELIEF REQUESTED

5.     By this Motion, the Debtor requests authority pursuant to Section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, to assume Debtor's prepetition executory contract with Infrahealth which provides medical records transcription services, in addition to client management, emr integration, insurance verification and billing services pursuant to a schedule attached to the Infrahealth Contract. A copy of the contract is attached, as is a proposed form of order granting the relief requested.    The Debtor does not believe that there is any arrearage on the Infrahealth  contract and does not believe that it will have any cure obligations as to the Infrahealth  Contract.     The majority and controlling owner of Infrahealth is Debtor's principal Priyam Sharma.    She owns approximately 99.9 percent of Infrahealth.   The pricing terms that are in the Debtor's contract with Infrahealth are the same pricing terms as those that Infrahealth charges to unrelated entities.

2

6.     Until entry of an Order assuming the Infrahealth Contract, Debtor does not admit that such document is, in fact, an executory contract within the meaning of the Bankruptcy Code, and all rights with respect thereto are being expressly reserved.

7.     In the months leading up to the Commencement Date, the Debtor conducted a review of its executory contracts and unexpired leases. As a result of that initiative, the Debtor has identified that the Infrahealth Contract is advantageous to the Debtor , and the Debtor believes, in its considered business judgment, that it will maximize the value of its assets if it is allowed to assume it.

8.     The Contract is necessary to the successful operation of the Debtor.

9.     Debtor reserves the ability to file further motions to assume or reject unexpired leases and executory contracts, and to request such relief in subsequent motions or in its chapter 11 plan.

## ASSUMPTION OF THE CONTRACTS IS IN THE BEST INTERESTS OF THE DEBTOR, ITS ESTATE, AND CREDITORS

10.     Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession "subject to the court's approval, may assume or reject any…executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard applied to determine whether the assumption of an executory contract or unexpired lease should be authorized is the "business judgment" standard. Courts defer to a debtor's business judgment in assuming an executory contract, and upon

3

finding that a debtor has exercised its sound business judgment, approve the assumption under section 365(a) of the Bankruptcy Code. *See In re Penn Traffic Co.*, 524 F.3d 373, 383 (2nd Cir. 2008); *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (recognizing the "business judgment" standard used to approve assumption or rejection of executory contracts or unexpired leases).

11.     The "business judgment" standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006).

12.     As set forth above, the Debtor has determined that the Infrahealth Contract is necessary for, and beneficial to, its business.

13.     In view of the foregoing, the Debtor respectfully requests that the Court approve the assumption of the Infrahealth Contract pursuant to Section 365(a) of the Bankruptcy Code in the manner requested herein.

## RESERVATION OF RIGHTS

14.     Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or, validity of any claim against the Debtor; (iii) a waiver of any claims or

4

causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, or adoption, of any agreement, contract, program, policy, or lease between the Debtor and any third party under Section 365 of the Bankruptcy Code other than as set forth in this Motion, subject to entry of the Proposed Order.

**NOTICE**

15.     Notice of this Motion will be provided to (i) the Office of the United States Trustee; (ii) Debtor's matrix; (iii) counsel of record; and (iv) the counterparties to the Contract.  The Debtor submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

16.     No previous requests for the relief sought herein has been made by the Debtor to this or any other Court.

WHEREFORE the Debtor respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Respectfully submitted,
/s/ Robert Bassel
Robert Bassel (P48420)
Counsel for Debtor
PO Box T
Clinton, MI 49236
248.677.1234
bbassel@gmail.com

Dated: 8.16.2022

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BERWICK CLINIC COMPANY, L.L.C.

Debtor.

No. 22-45589
Chapter 11
Hon. Lisa S. Gretchko

**ORDER GRANTING MOTION OF DEBTOR TO ASSUME
INFRAHEALTH CONTRACT AND FOR RELATED RELIEF**

Upon the motion (the "**Motion**")[1] of Debtor and Debtor-in-Possession in the

above-captioned Chapter 11 case (the "**Debtor**"),  pursuant to § 365 of title 11 of

the United States Code (the "**Bankruptcy Code**"), Rule 6006 of the Federal Rules

of Bankruptcy Procedure, for entry of an order (i) authorizing the Debtor to assume

the Infrahealth  Contract, and (ii) granting related relief, all as more fully set forth

in the Motion; and the Court having jurisdiction to decide the Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b); and

consideration of the Motion and the requested relief being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant

to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in

---

[1] References in this Order to terms not defined in this Order shall have the
meanings set forth in the underlying Motion.

6

the Motion having been given as provided in the Motion; such notice having been

adequate and appropriate under the circumstances, and it appearing that no other or

further notice need be provided; and the Court having held a hearing to consider

the relief requested in the Motion (the "**Hearing**"); and upon the record of the

Hearing, and upon all of the proceedings had before the Court, there being no

unresolved objections; and the Court having determined that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and it

appearing that the relief requested in the Motion is in the best interests of the

Debtor, their estates, their creditors, and all parties in interest; and after due

deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted.

2.      All objections, if any, to the Motion or the relief requested therein that

have not been withdrawn, waived or settled as announced to the Court at the

Hearing or by stipulation filed with the Court, and all reservations of rights

included therein, are hereby overruled on the merits.

3.      With respect to the Infrahealth  Contract, the Debtor has met all

requirements of Section 365(b) of the Bankruptcy Code.

4.      Pursuant to section 365 of the Bankruptcy Code, the Infrahealth

Contract attached to the Motion is hereby assumed by the Debtor.

5.     Debtor shall pay the Cure Costs indicated below, and relating to an assumed Contract within ten (10) days after the date on which each such Contract is deemed assumed.

| Name and Address | Cure Amount |
|---|---|
| Infrahealth | 0 |

The Debtor is authorized and directed to pay the Cure Costs in accordance with the terms of this Order.

6.     Payment of the Cure Costs will be in full and final satisfaction of any and all defaults under the Contracts, whether monetary or non-monetary. Infrahealth  hereby is forever barred, estopped and permanently enjoined from asserting against the Debtor, the estate, and their successors or assigns or the property of any of them, any default based on all known and unknown facts and circumstances existing as of the date of the Hearing.

7.     Nothing contained in the Motion or this Order or any payment made pursuant to the authority granted by this Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor;  or (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder.

8

8.    The Infrahealth  Contract remains in full force and effect for the benefit of Debtor and its estate.

9.    The Debtor is authorized to take any and all action necessary to effectuate the relief granted in this Order.

10.    The findings of fact and conclusions of law stated herein will constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact later will be determined to be a conclusion of law, it will be so deemed, and to the extent any conclusion of law later will be determined to be a finding of fact, it will be so deemed.

11.    This Court shall retain jurisdiction to interpret and enforce this Order and enter such further Orders necessary to effectuate the terms of this Order.

12.    This Order shall be effective immediately, notwithstanding any procedural provision in the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the relevant local rules or otherwise.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

|  | No. 22-45589 |
| BERWICK CLINIC COMPANY, L.L.C. | Chapter 11 |
|  | Hon. Lisa S. Gretchko |

Debtor.

## NOTICE OF MOTION OF DEBTOR TO ASSUME INFRAHEALTH CONTRACT AND FOR RELATED RELIEF

Debtor and Debtor-in-Possession in the above-captioned Chapter 11 case filed its motion to assume the executory Infrahealth Contract.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the Court to grant the motion, or if you want the Court to consider your views on the motion, then on or before 14 days from the date of service of the motion and this notice, unless shortened by the Court, you or your attorney must:

File with the Court a written objection or request for a hearing at:[21]

U.S. Bankruptcy Court
211 West Fort Street
Detroit, Michigan 48226

If you mail your objection or request for a hearing to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the 14 day period expires. All attorneys are required to file pleadings electronically.

You must also mail a copy to undersigned counsel whose address is below:

---

[21]Objection or request for a hearing must comply with F.R. Civ. P. 8(b), (c) and (e).

10

If an objection or request for hearing is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of the hearing.

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief**.

Respectfully submitted,
/s/ Robert Bassel
Robert Bassel (P48420)
Attorney for Debtor
PO Box T
Clinton, MI 49236
248.677.1234
bbassel@gmail.co

Dated: 8.16.2022

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

|  |  |
|---|---|
|  | No. 22-45589 |
| BERWICK CLINIC COMPANY, L.L.C. | Chapter 11 |
|  | Hon.  Lisa S. Gretchko |
| Debtor. |  |

## CERTIFICATE OF SERVICE

I certify that on 8.16.2022, I served copies as follows:

| | |
|---|---|
| Documents Served: | Motion of Debtor to Assume Infrahealth  Executory Contract and For Related Relief;  Notice of Time to Respond; Certificate of Service |
| Served Upon: | Office of the U.S. Trustee<br>211 West Fort Street, Suite 700<br>Detroit,  MI  48226 |
|  | matrix and Counsel of Record<br>and<br>InfraHealth Enterprises, LLC<br>POBOX 0427<br>Round Rock, TX 78680 |
| Method of Service: | First-Class Mail and via the ECF noticing system upon counsel of record |

Respectfully submitted,
/s/ Robert Bassel
Robert Bassel (P48420)
Attorney for Debtor
PO Box T
Clinton, MI 49236
248.677.1234
bbassel@gmail.com

Dated: 8.16.2022

12



## TRANSCRIPTION SERVICES AND CLIENT MANAGEMENT INTEGRATION AGREEMENT

THIS TRANSCRIPTION SERVICES AGREEMENT (this *"Agreement"*) is made and entered into as of December 1ˢᵗ, 2020 (*"Effective Date"*) by and between Infrahealth Enterprises LLC., a Texas corporation (*"Infrahealth"*), and Berwick Clinic Company, PA. (*"Customer"*).

### WITNESSETH:

WHEREAS, Infrahealth wishes to provide to Customer certain Transcription Services (defined below) and Customer wishes to retain Infrahealth as its exclusive provider of Transcription Services on a contract basis according to the terms and subject to the conditions set forth in this Agreement;

WHEREAS, Customer will make available and/or transfer to Infrahealth certain Protected Health Information (defined below), in conjunction with the performance of a function or activity that is being provided by Infrahealth to Customer, which is confidential and must be afforded special treatment and protection under the Privacy Rule (defined below) and the Security Rule (defined below); and

WHEREAS, Infrahealth will have access to and/or receive from Customer certain Protected Health Information that can be used or disclosed only in accordance with this Agreement, the Privacy Rule and the Security Rule;

NOW, THEREFORE, intending to be legally bound, Infrahealth and Customer agree as follows:

### 1. DEFINITIONS

Terms used, but not otherwise defined, in this Agreement shall have the same meaning as those ascribed to the terms in Code of Federal Regulations ("C.F.R.") at Title 45, Part 160 and Part 164. The following terms shall have the meaning ascribed to them in this Section. Other capitalized terms shall have the meaning ascribed to them in the context in which they first appear.

*"Approved File"* shall mean a read-only file in MS Word format consisting of a Draft File edited by Customer.

*"Dictation Unit"* shall mean the hand-held digital recording device purchased by Customer from Infrahealth for use with Infrahealth's proprietary connectivity hardware and software.

*"Draft File"* shall mean a file in MS Word format consisting of an initial transcription to be proofread and edited by Customer.

*"Electronic Protected Health Information"* shall mean individually identifiable health information that is transmitted or maintained by electronic media as described in 45 C.F.R. 160.103.

*"Fax or Faxing"* shall mean transmitting the **Approved File** from within the Transcription System via facsimile transmission.

*"HHS"* shall mean Department of Health and Human Services.
HOUSTON 687184v2

*"Identifier Code"* shall mean a unique identifier for dictation on the telephone.

*"Individual"* shall mean the person who is the subject of the Protected Health Information, and has the same meaning as the term "individual" is defined by 45 C.F.R. 164.501 and shall include a personal representative in accordance with 45 C.F.R. 164.502(g).

*"Infrahealth Username"* shall mean a name that is unique and is used to recognize and identify a person who is attempting to access areas of Infrahealth website that is Infrahealth's proprietary software, including all enhancements, improvements and modifications thereto that are restricted.

*"Infrahealth Password"* shall mean confidential authentication information composed of a string of characters used to recognize and identify a person who is attempting to access areas of Infrahealth website that is Infrahealth's proprietary software, including all enhancements, improvements and modifications thereto that are restricted.

*"Line"* shall mean sixty-five keystrokes of text, including characters and spaces.

*"Stat line"* shall mean sixty-five keystrokes of text, including characters and spaces for which Infrahealth will post the Customer's Draft File of on Infrahealth's website within 4 hours of Customer's proper and complete uploading of data to the Infrahealth server from the Dictation

Customer initials _____
Infrahealth initials _____

Unit or completed dictation by telephone, utilizing the Transcription System.

*"Pilot Period"* shall have the meaning set forth in Section 9.4 hereof.

*"Privacy Rule"* shall mean the Standards for Privacy of Individually Identifiable Health Information, C.F.R. at Title 45, Parts 160 and 164, Subpart E.

*"Protected Health Information"* shall have the same meaning as the term "protected health information" as described in 45 C.F.R. 164.501, limited to the information created or received by Infrahealth from or on behalf of Customer.

*"Required By Law"* shall have the same meaning as the term "required by law" in 45 C.F.R. 164.501.

*"Secretary"* shall mean the Secretary of HHS or his or her designee.

*"Security Rule"* shall mean the Standards for the Security of Electronic Protected Health Information, C.F.R. at Title 45, Parts 160 and 164, Subpart C; provided, however, that under no circumstances will either Party to this Agreement be required to comply with the Security Rule and/or the provisions of this Agreement applicable to the Security Rule prior to the appropriate deadline for compliance with the Security Rule.

*"Separated Personnel"* shall mean any employee of the Customer, including its affiliated medical personnel, agents and representatives whose employment is terminated with the Customer during the term of this contract and who has access to an Infrahealth Username or Infrahealth Password.

*"Transcription Fees"* shall mean the fees set forth on Exhibit "A" hereto.

*"Transcription Services"* shall mean the process of transferring data from one form (orally, as recorded on the Dictation Unit or Transcription System) to another form (a Draft File). Transcription Services are more fully discussed in Section 4 hereof and Exhibit "A" hereto and shall be provided in consideration of the payment of the Transcription Fees.

*"Transcription System"* shall mean Infrahealth's proprietary connectivity software and hardware, including all enhancements, improvements and modifications thereto.

*"Voice Recording or Voice File"* shall mean the voice recording data produced by Customer, including its affiliated medical personnel, agents and representatives.

## 2. CUSTOMER RESPONSIBILITIES

2.1 As of the Effective Date, Customer hereby retains Infrahealth to provide Transcription Services to Customer, and Infrahealth hereby agrees to perform such Transcription Services, subject to the terms and conditions of this Agreement.

2.2 With respect to transcription services, Infrahealth's rights are exclusive. During the term of this Agreement, Customer may not appoint other agents to provide transcription services or any other services provided for herein.

2.3 Customer, including its affiliated medical personnel, agents and representatives, shall dictate only into the Dictation Unit, with reasonable speed, clarity and enunciation, and shall spell out any unusual names or words.

2.4 Upon the execution of this Agreement, Infrahealth shall promptly deliver the required number of Dictation Units to Customer, which shall be purchased at the end of the Pilot Period by Customer at the price stated on Exhibit "A". Payment by Customer for the Dictation Units shall be made in accordance with the terms stated on Exhibit "A".

OR

Upon the execution of this Agreement, Infrahealth shall promptly set up an account within Infrahealth's Transcription System with the required number of Identifier Codes. Each Identifier Code will allow an individual dictator to dictate directly into an Infrahealth server via a toll free telephone number. Payment for this facility shall be $ 20.00 per Identifier Code per month.

2.5 Customer, at its sole expense, will provide Internet access and e-mail service at its facility, which will relay files from the Dictation Unit to Infrahealth's servers via the Transcription System. E-mail addresses for each party to this agreement shall be set forth in Section 14.

2.6 Customer shall be solely responsible for reviewing and editing the Draft File and finalizing the report. Infrahealth shall not convert a Draft File into an Approved File. Customer will be solely responsible for making any necessary changes to the Draft File and converting it to an Approved File.

2.7 Customer, including its affiliated medical personnel, agents and representatives shall be solely responsible for protecting *Infrahealth Username and Infrahealth*; not sharing the *Infrahealth Password* with anyone under any circumstances and changing the *Infrahealth Password* at frequent intervals.

Customer initials ____
Infrahealth initials ____

Customer, including its affiliated medical personnel, agents and representatives must construct strong passwords with all these characteristics:

(a) contain at both upper and lower case characters and digits (e.g., a-z, A-Z, 0-9), with at least one upper case character

(b) contain punctuation characters (e.g., !@#$%&) when enabled on particular computer systems

(c) are at least eight alphanumeric characters long including (a) and (b)

2.8 Customer shall notify Infrahealth in writing of any Separated Personnel immediately upon termination.

## 3. OWNERSHIP AND PROPERTY RIGHTS

3.1 Intellectual Property.  Infrahealth and Customer agree that the Transcription System, and all other software, hardware (other than the Dictation Unit), operating applications, scripts and other materials and technology developed by Infrahealth to provide the Transcription Services will be owned solely by Infrahealth, remain the exclusive property of Infrahealth and shall be retained by Infrahealth at the termination of this Agreement.

3.2 Files.  Infrahealth acknowledges that all data and all patient information provided by Customer will remain the property of Customer.

## 4. INFRAHEALTH OBLIGATIONS

Subject to the payment by Customer of the Transcription Fees and during the term of this Agreement, Infrahealth shall provide to Customer the following:

4.1 Infrahealth will install the Transcription System at Customer's facility and provide Customer with a demonstration of the Dictation Unit and its use in conjunction with the Transcription System. Any Customer specific additional services or capabilities are set forth in Exhibit "B" hereto.

4.2 Infrahealth will perform Transcription Services solely in accordance with the terms and conditions of this Agreement. During the term of this Agreement, subject to the payment by Customer of the Transcription Fees and to the terms of Infrahealth's standard rules, protocols and policies, as posted on the Infrahealth website and modified by Infrahealth from time to time, Infrahealth shall provide to Customer the following:

(a) Transcription Services shall be available to Customer 24 hours per day, 7 days per week.

(b) Infrahealth will provide to Customer a password allowing it to access Draft Files and Approved Files via the Internet. Draft Files shall be created by Infrahealth from information supplied to it by Customer.  Customer shall not disclose the password or permit any third parties to access Infrahealth's website.  Customer shall disclose the password to only those employees who need to have access to Infrahealth's website in order for the uploading of Customer data.

(c) Within 24 hours of Customer's proper and complete uploading of data to the Infrahealth server from the Dictation Unit or completed dictation by telephone, utilizing the Transcription System, Infrahealth will post the Customer's Draft File of such data on Infrahealth's website and will notify Customer via e-mail (if Customer has opted to receive an email) that a Draft File has been posted for proofreading and editing by Customer.  After Customer has proofread, edited and approved the Draft File and notified Infrahealth via e-mail, the Draft File will be saved as an Approved File which Customer may then print or download from the Infrahealth website.

(d) At Customer's request and subject to the continued payment by Customer of an additional storage fee as set forth on Exhibit 'A' (the "Storage Fee"), Infrahealth will store Customer's Approved Files on Infrahealth's server for such period of time as requested by Customer, up to a maximum storage period of two years, and permit Customer to view, search and print such Approved Files.

(e) At Customer's request and subject to an additional media fee as set forth on Exhibit "A" (the "Media Fee"), Infrahealth will deliver to Customer a CD-ROM containing Customer's Approved Files.

(f) At Customer's request and subject to an additional faxing fee as set forth on Exhibit "A" (the "Faxing Fee"), Infrahealth will provide to the customer the ability to fax Approved Files from within the Transcription System. Customer is responsible for initiating faxing and completion verification. Customer accepts and assumes all responsibilities for faxing certain Protected Health Information that can be used or disclosed only in accordance with the Privacy Rule and the Security Rule;

4.3 Infrahealth will maintain a help desk staff of knowledgeable, trained, and qualified personnel for technical support service, which shall be available to Customer during Infrahealth's normal business hours.

3

4.4 Infrahealth retains the right to modify and amend the manner in which it provides and delivers the Transcription Services for advances in its technology, provided Infrahealth continues to deliver at least the same level of service to Customer as described in this Agreement.

### 5. CHARGES

Customer will pay to Infrahealth the Transcription Fees and any other applicable additional fees according to the terms of this Agreement, including the terms of Exhibit "A".

5.1 Infrahealth will invoice Customer bi-monthly for Transcription Fees. Infrahealth will invoice Customer for other applicable additional fees when such services are rendered.

5.2 Payment of Transcription Fees and all other applicable fees and charges shall be due no later than fifteen (15) days after the date of the invoice.

5.3 Customer acknowledges that the monetary obligations to Infrahealth hereunder constitutes a commercial account. Customer will pay, in addition to all other amounts owed to Infrahealth, interest calculated at the rate of one and one-half percent (1.5%) per month (prorated for partial periods) on all amounts that are past due, until such amounts are paid in full.

5.4 Customer will pay, in addition to the payments required hereunder, all sales, use, property or similar taxes, fees, or duties, whether federal, state, or local, however designated, which are levied or imposed by reasons of the transactions contemplated hereby (excluding taxes based on Infrahealth's net income). Infrahealth will invoice Customer for sales taxes or other taxes, fees, or duties required to be reported or collected by Infrahealth.

5.5 If Infrahealth has not received payment of an invoice within fifteen (15) days from the invoice date, Infrahealth will have the right, exercisable with notice to Customer to suspend and/or cancel any and all services, including, but not limited to, Transcription Services and access to Infrahealth websites, being provided to Customer until such outstanding invoices are brought current.

### 6. PERMITTED USES AND DISCLOSURES BY INFRAHEALTH

6.1 General Uses and Disclosures. Except as otherwise limited in this Agreement, Infrahealth may use or disclose Protected Health Information to perform functions, activities, or services for, or on behalf of, Customer if such use or disclosure by Infrahealth complies with the Privacy Rule's minimum necessary policies and procedures required of Customer, and if such use or disclosure of Protected Health Information would not violate the Privacy Rule or the Security Rule if done by Customer.

6.2 Limits on Uses and Disclosures. Infrahealth hereby agrees that Infrahealth shall be prohibited from using or disclosing the Protected Health Information provided or made available by Customer for any purpose other than as expressly permitted, or required by this Agreement, or Required by Law.

6.3 Use for Management, Administration, and Legal Responsibilities. Infrahealth may use Protected Health Information for the proper management and administration of Infrahealth or to carry out Infrahealth's legal responsibilities, and if such use or disclosure of Protected Health Information would not violate the Privacy Rule or the Security Rule if done by Customer.

6.4 Disclosure for Management, Administration, and Legal Responsibilities. Infrahealth may disclose Protected Health Information for the proper management and administration of Infrahealth's legal responsibilities, provided that:

(a) The disclosure is Required by Law; or

(b) Infrahealth obtains reasonable assurances from the person to whom the Protected Health Information is disclosed that the Protected Health Information will remain confidential and used or further disclosed only as Required by Law or for the purpose for which it was disclosed to the person, and the person is obligated to notify Infrahealth of any instances of which it is aware in which the confidentiality of the information has been breached.

### 7. INFRAHEALTH OBLIGATIONS

7.1 Appropriate Safeguards. Infrahealth will establish and maintain reasonable and appropriate administrative, physical and technical safeguards to:

(a) Prevent the use or disclosure of the Protected Health Information, other than as such use or disclosure is permitted by this Agreement; and

(b) Protect the confidentiality, integrity, and availability of the Electronic Protected Health Information that Infrahealth creates, receives, maintains, or transmits on behalf of Customer.

7.2 Reports of Improper Use, Disclosure or Security Incidents. Infrahealth hereby agrees that it shall report, to Customer any:

(a) Use or disclosure of Protected Health Information not provided for or allowed by this Agreement; or

4

Customer initials _____
Infrahealth initials _____

(b) Security incidents in regard to the Electronic Protected Health Information of which Infrahealth becomes aware.

7.3 Subcontractors and Agents. Infrahealth will ensure that any agent, including a subcontractor, to whom Infrahealth provides Protected Health Information, created or received by Infrahealth on behalf of Customer, agrees to:

(a) The same restrictions and conditions that apply to Infrahealth in this Agreement to such Protected Health Information; and

(b) Implement reasonable and appropriate safeguards to protect the Electronic Protected Health Information.

7.4 Right of Access to Protected Health Information. Except as otherwise limited in this Agreement, Infrahealth hereby agrees to provide access to Protected Health Information in a Designated Record Set (if applicable and as defined in 45 C.F.R. 164.501) to Customer or, as directed by Customer, to an Individual in order to meet the requirements under 45 C.F.R. 164.524, at the request of Customer, and in the time and manner designated by Customer.

7.5 Amendments to Protected Health Information. Infrahealth agrees to make any amendment(s) to Protected Health Information in a Designated Record Set, if applicable, that Customer directs or agrees to pursuant to 45 C.F.R. 164.526, at the request of Customer or an Individual, and in a reasonable time and manner.

7.6 Access to Books and Records. Except as otherwise limited in this Agreement, Infrahealth agrees to make its internal policies, procedures, practices, books and records relating to the use, disclosure and safeguarding of Protected Health Information received from, or created or received by Infrahealth on behalf of Customer, available to the Secretary or Customer, in a time and manner designated by the Secretary or Customer, for purposes of the Secretary's determining Customer's compliance with the Privacy Rule and the Security Rule.

7.7 Documentation of Disclosures. Infrahealth agrees to document such disclosures of Protected Health Information and information related to such disclosures as would be required for Customer to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 C.F.R. 164.528.

7.8 Provide Accounting. Except as otherwise limited in this Agreement, Infrahealth agrees to provide to Customer or an Individual, in a reasonable time and manner, information collected in accordance with Section 7.7 of this Agreement, to permit Customer to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 C.F.R. 164.528.

7.9 Mitigation Procedures. Infrahealth agrees to mitigate, to the extent practicable, any harmful effect that is known to Infrahealth of a use or disclosure of Protected Health Information by Infrahealth in violation of the requirements of this Agreement.

## 8. CUSTOMER OBLIGATIONS

8.1 Provide Notice. Customer shall provide Infrahealth with the notice of privacy practices that Customer produces in accordance with 45 C.F.R. 164.520, as well as any changes to such notice, when such copy of the notice or amended notice is required for compliance with the Privacy Rule.

8.2 Provide Changes of Authorization or Permission. Customer shall provide Infrahealth with any changes in, or revocation of, authorization or permission by Individual to use or disclose Protected Health Information, if such changes affect Infrahealth's permitted or required uses and disclosures.

8.3 Provide Restrictions. Customer shall notify Infrahealth of any restrictions to the use or disclosure of Protected Health Information changing Infrahealth's obligations that Customer has agreed to in accordance with 45 C.F.R. 164.522.

8.4 Permissible Requests by Customer. Customer shall not request Infrahealth to use or disclose Protected Health Information in any manner that would not be permissible under the Privacy Rule, the Security Rule, or this Agreement if done by Customer.

8.5 Infrahealth Subcontractors. Customer acknowledges that Infrahealth has devoted considerable time and expense developing its network of subcontractors to assist in the Transcription Services. Customer agrees that it will not directly or indirectly engage the services of those subcontractors during the term hereof and for a period of twelve months subsequent to termination of this Agreement without the prior written consent of Infrahealth.

## 9. TERM

9.1 This Agreement is effective as of the Effective Date and shall remain in effect until the first anniversary thereof. Thereafter, this Agreement will automatically renew for additional one (1) year periods, unless and until either party provides written notice at least ninety (90) days prior to the end of the then-current term of its intent not to renew the Agreement for another year. Infrahealth agrees

5

Customer Initials
Infrahealth Initials

to provide services pursuant to this Agreement until at least the termination date.

9.2 Both Parties shall have the right to terminate this Agreement upon thirty (30) days advance written notice.

9.3 Upon the termination of this Agreement, Customer shall return to Infrahealth the Transcription System that is located on the customer site or otherwise provided to Customer under this Agreement, if any.

9.4 For that number of days set forth on Exhibit "A" (the **"Pilot Period"**) following the Effective Date, Infrahealth will lend to Customer a Dictation Unit and will perform Transcription Services according to the terms of this Agreement at the prices contained in Exhibit "A". At the end of the Pilot Period, Customer may terminate this Agreement by (i) providing written notice to Infrahealth at or prior to the end of the Pilot Period; (ii) returning the Dictation Units to Infrahealth; and (iii) paying to Infrahealth the Transcription Fees for any Transcription Services rendered during the Pilot Period.

9.5 In the event that any federal, state, or local law or regulation currently existing or hereinafter enacted, or any final or non-appealable construction or interpretation of such law or regulation (whether federal, state, or local) or enforcement of such laws or regulations hereinafter occurs that makes performance of this Agreement impossible or illegal, the Parties mutually agree to enter into a modification of this Agreement to make substantial performance of this Agreement possible. However, should the Parties be unable to agree upon an appropriate modification to comply with such requirements following thirty (30) days of good faith negotiations, either Party may give written notice to immediately terminate this Agreement.

9.6 Except as otherwise limited in this Agreement, and except as provided in Section 9.7 of this Agreement, upon termination of this Agreement, for any reason, Infrahealth hereby agrees to return all Protected Health Information received from Customer, or created or received by Infrahealth on behalf of Customer, or, to the extent authorized by Customer, destroy such Protected Health Information.

9.7 Except as otherwise limited in this Agreement, in the event that Infrahealth determines that returning or as authorized by Customer destroying the Protected Health Information is not feasible, Infrahealth shall provide to Customer notification of the conditions that make return or destruction of the Protected Health Information not feasible. Upon mutual agreement of the Parties that return or destruction of Protected Health Information is not feasible, Infrahealth shall extend the protections of this Agreement to such Protected Health Information and limit further uses and disclosures of such Protected Health Information to those purposes that make the return or destruction not feasible, for so long as Infrahealth maintains such Protected Health Information.

## 10. EXCLUSION OF WARRANTIES

10.1 ALL SERVICES AND PRODUCTS, INCLUDING, BUT NOT LIMITED TO, THE TRANSCRIPTION SERVICES, USE OF A DICTATION UNIT, USE OF THE IDENTIFIER CODES, USE OF THE TRANSCRIPTION SYSTEM, AND THE USE OF INFRAHEALTH'S WEBSITE, PURSUANT TO THIS AGREEMENT ARE PROVIDED ON AN "AS IS" BASIS AND "WITH ALL FAULTS." NEITHER INFRAHEALTH NOR ANY OF ITS OFFICERS, EMPLOYEES, DIRECTORS, AGENTS OR LICENSORS WARRANT THAT THE SERVICES AND PRODUCTS, INCLUDING, BUT NOT LIMITED TO, THE TRANSCRIPTION SERVICES, USE OF A DICTATION UNIT, THE USE OF THE TRANSCRIPTION SYSTEM, AND THE USE OF INFRAHEALTH'S WEBSITE, PROVIDED PURSUANT TO THIS AGREEMENT WILL BE UNINTERRUPTED OR ERROR FREE, NOR DO THEY WARRANT THAT CERTAIN RESULTS MAY BE OBTAINED BY CUSTOMER IN CONNECTION WITH ANY SERVICES OR PRODUCTS PROVIDED HEREUNDER. INFRAHEALTH, ITS OFFICERS, EMPLOYEES, DIRECTORS, AGENTS AND LICENSORS MAKE NO WARRANTY, GUARANTEE OR REPRESENTATION, EXPRESS OR IMPLIED REGARDING THE MERCHANTABILITY, NON-INFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE OF ANY SERVICES OR PRODUCTS, INCLUDING BUT NOT LIMITED TO THE TRANSCRIPTION SERVICES, USE OF A DICTATION UNIT, THE USE OF THE TRANSCRIPTION SYSTEM, AND THE USE OF INFRAHEALTH'S WEBSITE, PROVIDED UNDER THIS AGREEMENT AND HEREBY DISCLAIM ALL EXPRESS AND IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ANY OTHER IMPLIED WARRANTY DEALING WITH THE QUALITY OF SERVICES PROVIDED.

## 11. LIMITATION OF LIABILITY AND DAMAGES

11.1 The cumulative liability of Infrahealth to Customer and its affiliates, agents and representatives for all claims whatsoever related to the services provided by Infrahealth, or otherwise arising out of the performance or nonperformance of this Agreement, or any act,

6

Customer initials _____
Infrahealth initials _____

event, or circumstance affecting Customer and its affiliates, agents and representatives, including any cause of action sounding in contract, tort, or strict liability, shall not exceed the total amount of all fees paid to Infrahealth by Customer for the specific services forming the basis of such claim.

11.2 IN NO EVENT SHALL INFRAHEALTH BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES IN CONNECTION WITH ANY CLAIM WHATSOEVER RELATED TO THE TRANSCRIPTION SERVICES OR ANY OTHER SERVICES OR PRODUCT PROVIDED BY INFRAHEALTH, OR OTHERWISE ARISING OUT OF THE PERFORMANCE OR NONPERFORMANCE OF THIS AGREEMENT, OR ANY ACT, EVENT, OR CIRCUMSTANCE AFFECTING CUSTOMER, INCLUDING ANY CAUSE OF ACTION SOUNDING IN CONTRACT, TORT, OR STRICT LIABILITY.

11.3 Infrahealth shall be excused from responsibility for any delay, interruption, error, or malfunction resulting from natural disaster, terrorism, transportation problems, civil unrest, war, defects or malfunctions of third-party software, hardware, or communications; acts or omissions of Customer or other persons not hired and supervised by Infrahealth; and other acts, events, or circumstances beyond its reasonable control, whether or not foreseeable or identified.

11.4 Each party shall indemnify and hold harmless the other party from and against any and all claims, liabilities, damages, and expenses, including reasonable attorneys' fees, incurred by the other party in defending or compromising actions brought against it, its officers, directors, employees, or agents, arising out of or related to: (i) the acts or omissions of the other party in providing services or performance of duties pursuant to this Agreement or a party's breach of this Agreement, (ii) in each party's conduct while on the other party's property, or (iii) for any action or claim brought against such party by any third party (including any agent, representative or affiliate of the other party) for any matter or amount under the terms and conditions of this Agreement, including in each such case, without limitation, for the SOLE OR CONCURRENT NEGLIGENCE OF EITHER PARTY or its agents, representatives or affiliates.

11.5 Customer agrees to use all reasonable due care in the handling and use of the Transcription System. Responsibility for, and risk of loss of, the Transcription System shall be borne by Customer from the date Infrahealth or its designated common carrier delivers the

Transcription System to Customer, and shall remain with Customer until the Transcription System has been returned by Customer to Infrahealth. Customer shall maintain property insurance coverage for the Transcription System at all times and shall, upon written request, provide Infrahealth with a certificate of insurance evidencing such coverage. Customer shall under no circumstances share the business process, data, work flow, Infrahealth Username, Infrahealth Password of the Transcription System with a third party. The Customer agrees not to showcase the Transcription System to a third party without prior written consent from Infrahealth.

## 12. ARBITRATION

Any and all disputes arising out of or in connection with the interpretation, performance, or nonperformance, or termination of, this Agreement shall be settled promptly by negotiation between the parties. If within thirty (30) days after the date on which one party sends to the other a letter describing the dispute in reasonable detail, no resolution of the dispute has been reached through negotiation, either party may request that such dispute be resolved in accordance with the commercial Rules of the American Arbitration Association ("*AAA*"). Such arbitration shall take place in Austin, Texas, and shall be conducted by one (1) arbitrator selected in accordance with the then-existing Rules of the AAA. The decision of the arbitrator shall be final and binding and may be enforced in any court having jurisdiction over the parties or their assets. The arbitrator shall decide all disputes in accordance with equity and good commercial practice and shall be bound by the laws of the State of Texas, provided that it is mutually agreed that the express provisions of this Agreement are intended to control.

## 13. CONFIDENTIALITY

13.1 Infrahealth and Customer agree to keep confidential the terms of this Agreement, including the amounts of consideration paid hereunder, except as such disclosure may be required in connection with any arbitration proceedings.

## 14. ADDRESS FOR NOTICES/E-MAIL ADDRESSES

Any notice or communication to a party with respect to this Agreement shall be made in writing and actually delivered (whether by mail or facsimile) as follows:

7

Customer initials
Infrahealth initials

TO INFRAHEALTH:

Infrahealth,
P.O. BOX 0427
Round Rock, TX 78680
Facsimile: 512.233.1795

TO CUSTOMER:
Berwick Clinic Company LLC
701 E 16th St,
Berwick, PA 18603.
Phone 570-759-5000.


Notwithstanding the foregoing, communications with respect to the status of the Draft Files shall be delivered to the following e-mail addresses:

TO INFRAHEALTH:

E-mail Address: finance@Infrahealth.com

TO CUSTOMER:

E-mail:
joanne.wagner@berwickhospitalcenter.com

### 15. GENERAL

15.1 (a) Infrahealth, in performance of this Agreement, is acting as an independent contractor and shall have the exclusive control of the manner and means of performing the work. Personnel supplied by Infrahealth hereunder are not employees or agents of Customer.

(b) The headings used herein are for reference and convenience only and shall not enter into the interpretation hereof.

(c) No delay or omission by either party to exercise any right or power occurring upon any noncompliance or default with respect to any terms of this Agreement shall impair any such right or power, or be construed as a waiver thereof. A waiver by either party of any of the covenants, conditions, or agreements to be performed by a party shall not be construed as a waiver of any succeeding breach or default in the same or any other term or condition hereof.

(d) If, under this Agreement, one party is required to give notice to the other, such notice shall be deemed given if sent by first-class mail, overnight courier, telecopy, e-mail, or other reliable means of communication, provided that it is properly addressed or directed, and provided that telecopy or e-mail communications shall be confirmed via hard-copy delivery.

(e) The validity, construction, and performance of this Agreement shall be governed by the laws of the State of Texas, exclusive of choice-of-law provisions.

(f) If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, the remaining provisions of this Agreement shall remain in full force and effect.

(g) Neither party may transfer or assign this Agreement or its rights hereunder without the prior written consent of the other party, except to a successor to all or substantially all of the business and properties of the assigning party, and except that Infrahealth may in its discretion pledge or assign its rights to payment hereunder. Subject to the foregoing, this Agreement shall inure to the benefit of and shall be binding on the parties hereto, and their respective permitted successors and assigns.

(h) This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements, oral or written, and all other communications regarding the subject matter hereof. No amendment or modification of any provision of this Agreement shall be effective unless set forth in writing that purports to amend this Agreement and that is executed by the party against whom such amendment is sought to be enforced.

(i) Applicable provisions of this Agreement shall survive following termination of this Agreement as necessary to give effect thereto.

(j) Both Infrahealth and Customer acknowledge that mutual cooperation and assistance is essential to each Party's performance under this Agreement; therefore, it will be the duty of both Parties to make all good faith efforts to fully cooperate in the execution of this Agreement.

(k) A reference in this Agreement to a section in the Privacy Rule or the Security Rule means the section as in effect or as amended, and for which compliance is required.

(l) Except as otherwise limited in this Agreement, the Parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Customer to comply with the requirements of the Privacy Rule, the Security Rule, and the Health Insurance Portability and Accountability Act, Public Law 104-191. No changes in or additions to this Agreement shall be recognized unless incorporated herein by written amendment by the Parties, such amendment(s) to become effective on the date stipulated in such amendment(s). No discharge of obligations arising under this Agreement shall be valid unless in writing and executed by the Party

8

Customer initials
Infrahealth initials

against whom such discharge is sought to be enforced.

(m) Any ambiguity in this Agreement shall be resolved in favor of a meaning that permits Customer to comply with the Privacy Rule and the Security Rule.

15.2     The rights and obligations set forth in this Agreement may be enforced only by Infrahealth and Customer, respectively. It is expressly understood that no patient, agent, representative or affiliated healthcare provider of Customer shall have standing to make demands or bring claims against Infrahealth for matters addressed by this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives effective as of the day and year first above written.

INFRAHEALTH

By: _____

Printed Name: Mathew Chacko

Title: Finance Manager

Customer Name: Berwick Clinic Company LLC

By: _____

Printed Name: PRIYAM SHAEMA

Title: CEO

9

## EXHIBIT 'A'

### TRANSCRIPTION SERVICES AND TRANSCRIPTION FEES

Transcription Services:

**Transcription Fees:**

| | |
|---|---|
| $ 00.10 | per Line |
| $ 00.35 | per stat Line (Report delivered within 4 hours) |
| $ 01.00 | per Report for EMR Integration (not to exceed $200/Physicians reports) |
| $ 250.00 | per Customer fee per month for unlimited Faxing within the continental United States, Hawaii and Alaska. |
| $ 25.00 | per Physician fee per month for unlimited Faxing within the continental United States, Hawaii and Alaska. |
| $ 1.00 | per report for CD (data storage copy) |

Note: Infrahealth agrees to import transcribed reports into Customer's in-house system at no additional charge.

### CLIENT MANAGEMENT, EMR INTERGRATION, INSURANCE VERIFICATION AND BILLING FEES.

**Billing Fees:-**

| Billing Fees | 6% of insurance and Patient collection |
|---|---|

| Client Management, Medical Record Requests, EMR Integration (Full Time Employee) Fees: | $1,500 per FTE. |
|---|---|

| Insurance Verification | |
|---|---|

| No. | Description | Price |
|---|---|---|
| 1 | Customized Eligibility Form (CEF) - Exhibit 1 | $5.99 - Base |
| 2 | Stat CEF | Add $1.59 to Base |
| 3 | Pre-certification done with a CEF | Add $1.69 to Base |
| 4 | Re-vertification once a month on active scheduled patients | $1.69 |
| 5 | Per IVR (Medicare, Medicaid, Government Payer) | $1.69 |
| 6 | Stat with Pre-certification | Add $2.00 to Base |
| 7 | Authorization | Add $1.00 to Base |
| 8 | Stat with Authorization | Add $2.00 to Base |
| 9 | PCP Referral Call | Add $1.00 |
| 10 | PCP Referral Fax | Add $25.00/ month unlimited faxing Or $00.50 per fax up to 50 faxes. |

Customer initials
Infrahealth initials

Storage Fees:  N/A

Media Fees:  N/A

Pilot Period:  3 days following Effective Date.

Dictation Units:  Customer shall have the choice to purchase Dictation Units from Infrahealth at a price of:

- Two Hundred and Ninety Nine Dollars ($299.00) for Olympus DS 3500 per Dictation Unit (if available by Olympus)

- Four Hundred and Ninety Nine Dollars ($499.00) for Olympus DS 5000 per Dictation Unit (if available by Olympus)

Payment for such Dictation Units shall be due and payable within 15 days of Customer's receipt of Infrahealth's invoice.

Customer initials
Infrahealth initials

CUSTOMER SPECIFIC ADDITONAL SERVICES OR CAPABILITIES